UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NAOMI WEIZMAN,<br><br>              Plaintiff,<br><br>      v.<br><br>TALKSPACE, INC.,<br><br>              Defendant. | Case No. 23-cv-00912-PCP<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Dkt. No. 27 |

Defendant Talkspace, Inc. moves to dismiss plaintiff Naomi Weizman's complaint. For the reasons that follow, the Court grants Talkspace's motion to dismiss Weizman's request for an equitable remedy, including injunctive relief. The Court denies the motion to strike the class claims and the other allegations in the complaint.

## BACKGROUND

Talkspace is an online mental health services platform. Weizman is a consumer who allegedly purchased therapy sessions from Talkspace in October 2022 but was not matched with a suitable therapist thereafter. After discovering that Talkspace had entered her into an automatically renewing subscription plan, meaning that she would be charged for Talkspace's services each month even though she did not affirmatively consent to such renewal, Weizman allegedly cancelled her Talkspace subscription on October 13, 2022. Weizman alleges that she was nonetheless charged $396 by Talkspace on November 10, 2022. Weizman contends that she would not have purchased any therapy sessions at all from Talkspace had she known that Talkspace was going to enter her into an automatically renewing subscription plan.

Weizman filed this class action lawsuit against Talkspace on March 1, 2023, alleging that Talkspace unlawfully enrolled patients in automatically renewing subscription plans. Weizman

United States District Court<br>Northern District of California

1    asserts a claim under California's Unfair Competition Law (UCL), alleging that Talkspace's

2    practices are "unlawful" within the meaning of the UCL because they violate California's

3    Automatic Renewal Law (ARL). The ARL makes it unlawful to (1) "[f]ail to present the automatic

4    renewal offer terms or continuous service offer terms in a clear and conspicuous manner before

5    the subscription or purchasing agreement is fulfilled" and to (2) "[c]harge the consumer's credit or

6    debit card … for an automatic renewal or continuous service without first obtaining the

7    consumer's affirmative consent." Cal. Bus. & Prof. Code § 17602(1)–(2).[1]

8         In her complaint, Weizman requests class certification, declaratory relief, injunctive relief

9    prohibiting Talkspace from continuing to engage in the alleged unfair and unlawful business

10   practice, a monetary award (including disgorgement and restitution), and attorney's fees.

11   Talkspace now moves to dismiss Weizman's complaint pursuant to Federal Rule of Civil

12   Procedure 12(b)(6). Specifically, Talkspace argues that Weizman does not have standing to bring

13   her UCL claim because she allegedly reactivated her account on November 4, 2022. Talkspace

14   also moves to strike Weizman's class claims and other purportedly inflammatory allegations in the

15   complaint pursuant to Federal Rule of Civil Procedure 12(f). In support of its motion to strike

16   class allegations, Talkspace introduces its Terms of Use containing a purported class waiver, and

17   argues that Weizman consented to the Terms of Use when she created a Talkspace account.

### STANDARD OF REVIEW

19        The Federal Rules generally require a complaint to include only a "short and plain

20   statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In

21   considering a Rule 12(b)(6) motion contending that the complaint fails to state a claim, the Court

22   must "accept all factual allegations in the complaint as true and construe the pleadings in the light

23   most favorable" to the non-moving party. *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028,

24   1029–30 (9th Cir. 2009). Dismissal is required if the plaintiff fails to allege facts allowing the

25   Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."

---

27   [1] The ARL does not provide a freestanding remedy and instead relies upon UCL enforcement.
     *Mayron v. Google LLC*, 54 Cal.App.5th 566, 570 (Cal. Ct. App. 2020) (holding that there is no
28   private right of action under the ARL and that remedies for an ARL violation are therefore limited
     to those provided by the UCL).

United States District Court
Northern District of California

1    *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). While legal conclusions "can provide the complaint's

2    framework," the Court will not assume they are correct unless adequately "supported by factual

3    allegations." *Id.* at 664.

4          On a Rule 12(b)(6) motion, the Court must take the factual allegations in the complaint as

5    true without considering competing factual allegations presented by the other party. "If defendants

6    are permitted to present their own version of the facts at the pleading stage … it becomes near

7    impossible for even the most aggrieved plaintiff to demonstrate a sufficiently 'plausible' claim for

8    relief." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998–99 (9th Cir. 2018). Materials

9    outside the complaint can be considered only if they are incorporated by reference therein or

10   otherwise judicially noticeable. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("A

11   [district] court may … consider certain materials—documents attached to the complaint,

12   documents incorporated by reference in the complaint, or matters of judicial notice—without

13   converting the motion to dismiss into a motion for summary judgment."). Incorporation by

14   reference is permitted if the complaint "refers extensively to the document" or if "the document

15   forms the basis" of the claim. *Khoja*, 899 F.3d at 1002. Federal Rule of Evidence 201 permits

16   judicial notice of "a fact that is not subject to reasonable dispute" because it is "generally known."

17         Rule 12(f) permits the Court to "strike from a pleading an insufficient defense or any

18   redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike

19   are "generally not granted unless it is clear that the matter to be stricken could have no possible

20   bearing on the subject matter of the litigation." *LeDuc v. Ky. Cent. Life Ins. Co.*, 814 F. Supp. 820,

21   830 (N.D. Cal. 1992). The moving party has the burden to show that the allegations it hopes to

22   strike as irrelevant will cause "specific undue prejudice." *In re Facebook PPC Advert. Litig.*, 709

23   F. Supp. 2d 762, 773 (N.D. Cal. 2010). Ultimately, "whether to grant a motion to strike lies within

24   the sound discretion of the district court." *Woods v. Google LLC*, 2018 WL 5292210, at *2 (N.D.

25   Cal. Oct. 23, 2018).

26                      **ANALYSIS**

27         The Court will first consider Talkspace's arguments that Weizman fails to state a UCL

28   claim under Rule 12(b)(6), then its request to strike certain allegations under Rule 12(f).

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

### I.      Weizman Adequately Alleges Causation Under the UCL.

Talkspace first argues that Weizman fails to allege causation under the UCL. To assert a UCL claim, a plaintiff must show "a causal connection between [the defendant's] alleged UCL violation and her injury in fact." *Rubio v. Capital One Bank*, 613 F.3d 1195, 1204 (9th Cir. 2010). Talkspace contends that Weizman did not suffer an economic harm resulting from Talkspace's purported automatic renewal violation because Weizman became aware of her subscription in October 2022 and cancelled it before being charged. Dkt. No. 27, at 17. Regarding the $396 payment that Weizman made in November 2022, Talkspace alleges that Weizman "voluntarily reactivated" her subscription in early November. *Id.* On that basis, Talkspace argues that the chain of causation was broken between the alleged automatic subscription and Weizman's $396 charge.

Talkspace's argument fails for two reasons. First, Talkspace ignores the allegation that Weizman was charged when she first signed up on the platform in October 2022. Weizman alleges in her amended complaint that she "purchased therapy sessions from Talkspace in October 2022 using her credit card." Dkt. No. 25, at 18. And she alleges that she "would not have purchased therapy services from Talkspace if she had known that it would enter her into an automatically renewing subscription plan without her permission." *Id.* at 19. Even if the Court were to consider Talkspace's contentions about Weizman's purported November reactivation, there is a clear economic injury that Weizman experienced beforehand stemming from Talkspace's alleged UCL violation of failing to provide proper initial disclosures. Since Weizman alleged that she would not have paid anything to Talkspace had it provided the legally required disclosures, she experienced an economic injury sufficient to establish UCL standing regardless of what happened thereafter.[2]

---

[2] Talkspace argues that Weizman's initial purchase cannot establish her UCL standing because it was not the "recognized harm the ARL seeks to prevent," which Talkspace claims to be "future charges for *ongoing* services that were not initially authorized by the consumer." Dkt. No. 40, at 6. But even though Weizman's UCL claim alleges an ARL violation, she is not required to show that she suffered economic injury from an unauthorized automatic renewal to establish standing under the UCL. Rather, she must only allege (1) economic injury, and (2) "that economic injury was the result of, i.e., *caused by*, the unfair business practice or [ARL violation] that is the gravamen of the claim." *Kissel v. Code 42 Software, Inc.*, 2016 WL 7647691, at *7 (C.D. Cal. Apr. 14, 2016). Here, Weizman alleges that she made an initial purchase of Talkspace's therapy services but that she would not have made this purchase had Talkspace disclosed that she would thereafter be entered into an automatically renewing subscription plan in compliance with the ARL's disclosure requirements. Weizman has thus properly alleged economic harm caused by an ARL violation.

Second, Talkspace's argument improperly depends upon materials outside the pleadings. Weizman alleges that she cancelled her Talkspace subscription on October 13, 2022 after discovering that she had been entered into an automatically renewing subscription plan. Dkt. No. 25, at 19. She further alleges that she was nonetheless automatically charged $396 on November 10, 2022. *Id.* Talkspace contests this allegation on the basis of evidence purportedly demonstrating that Weizman was charged this amount because she "voluntarily reactivated her Talkspace subscription" on November 4, 2022. Dkt. No. 27, at 17. But Talkspace's "voluntary reactivation" theory is neither referenced extensively in Weizman's complaint nor a generally known fact not subject to reasonable dispute, so the doctrines of incorporation by reference and judicial notice do not apply to any of the materials upon which Talkspace relies. This Court cannot consider Talkspace's evidentiary materials in ruling upon its 12(b)(6) motion, and must instead accept as true Weizman's allegation that the $396 payment Weizman made in November was directly caused by Talkspace's violation of the ARL.

## II.     Weizman Fails To Allege an Inadequate Remedy at Law.

Talkspace also argues that Weizman's UCL claim should be dismissed because she does not "plausibly allege an inadequate remedy at law." Dkt. No. 27, at 19. Remedies under the UCL are equitable in nature and legal damages cannot be recovered. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1144 (Cal. 2003). UCL remedies are thus generally limited to restitution and prospective declaratory or injunctive relief. *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 130 (Cal. 2009). The Ninth Circuit has held that plaintiffs seeking equitable relief under the UCL in a federal court sitting under diversity jurisdiction must establish that they lack an adequate remedy at law. *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020).

Weizman concedes that she does not explicitly allege an inadequate remedy at law in her complaint, but argues that "it is apparent from the face of the complaint that [she] lacks an adequate remedy at law" because she does not expressly bring a Consumer Legal Remedies Act (CLRA) claim—something plaintiffs often pursue alongside their UCL claim in order to seek damages. Dkt. No. 38, at 7. Weizman contends that by bringing only a UCL cause of action for equitable relief, she implicitly establishes that she lacks an adequate remedy at law. In so arguing,

United States District Court
Northern District of California

Weizman distinguishes her case from *Sonner*, which initially involved not only UCL claims but also CLRA claims that the plaintiff dropped shortly before trial in order to strengthen their claims for UCL relief. *See Nacarino v. Chobani LLC*, 2022 WL 344966, at *9 (N.D. Cal. Feb. 4, 2022) ("*Sonner* teaches that a plaintiff, on the eve of trial, cannot create an inadequacy of a legal remedy by eliminating its availability by taking volitional action.").

Nonetheless, courts in this District have generally required that plaintiffs at least allege the lack of a remedy at law when asserting a UCL claim. *See, e.g.*, *Guthrie v. Transamerica Life Ins. Co.*, 561 F.Supp.3d 869, 875 (N.D. Cal. 2021) ("I and many other district judges applying *Sonner* have understood it to require that a plaintiff must, at a minimum, *plead* that she lacks adequate remedies at law if she seeks equitable relief."); *In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prod. Liab. Litig.*, 497 F.Supp.3d 552, 638 (N.D. Cal. 2020) (granting plaintiffs "leave to amend to expressly allege that their remedies at law are inadequate and to support their claim to equitable restitution under the UCL"). The Court agrees with this approach. After all, "it is the burden of the party who seeks the exercise of jurisdiction in his favor [to] clearly allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute," and jurisdiction cannot be "inferred argumentatively from averments in the pleadings, but rather must affirmatively appear in the record." *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990). The Court therefore grants Talkspace's motion to dismiss Weizman's UCL claim for failure to allege an inadequate remedy at law, while also granting Weizman leave to include such an allegation in an amended complaint should she be able to do so.[3]

## III.    Weizman Lacks Standing To Seek Injunctive Relief.

A plaintiff must have Article III standing for each element of relief sought. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) (rejecting the argument that constitutional standing in a

---

[3] Weizman need not explain in great detail why her legal remedies are insufficient; an allegation to that effect is generally enough. *Murphy v. Olly Pub. Benefit Corp.*, 2023 WL 210838, at *11 (N.D. Cal. Jan. 17, 2023) ("*Sonner* does not require Plaintiffs to 'demonstrate' anything at the pleadings stage. Plaintiffs alleged that legal remedies were not as certain as equitable remedies. That is sufficient."); *Johnson v. Trumpet Behav. Health, LLC*, 2022 WL 74163, at *3 (N.D. Cal. Jan. 7, 2022) ("[B]ecause *Sonner* was decided at a later posture, I agree with the plaintiffs that, if a plaintiff pleads that she lacks an adequate legal remedy, *Sonner* will rarely (if ever) require more this early in the case.").

1    pending damages suit affords the plaintiff Article III standing to seek a distinct equitable remedy).

2    A plaintiff who has been wronged is only entitled to injunctive relief if they can show that they

3    face "real or immediate threat that [they] will again be wronged in a similar way." *Mayfield v.*

4    *United States*, 599 F.3d 964, 970 (9th Cir. 2010). "Past exposure to illegal conduct does not in

5    itself show a present case or controversy regarding injunctive relief … if unaccompanied by any

6    continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974).

7         Here, Weizman seeks injunctive relief barring Talkspace from continuing to implement its

8    allegedly unlawful subscription plan. Talkspace contends, however, that Weizman does not allege

9    any intention to use Talkspace's platform or services in the future, and that she thus lacks standing

10    to seek such relief. Dkt. No. 27, at 20. Weizman responds that she can pursue injunctive relief

11    because the allegations in her complaint do not definitively rule out the possibility that she will

12    purchase a subscription to Talkspace in the future. Dkt. No. 38, at 10.

13         Weizman misunderstands the applicable standard. That she "has not definitively ruled out

14    [a] future subscription" to Talkspace is not dispositive. *Id.* Rather, "[w]here standing is premised

15    entirely on the threat of repeated injury, a plaintiff must show 'a sufficient likelihood that [she]

16    will again be wronged in a similar way.'" *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969–

17    70 (9th Cir. 2018) (citing *Lyons*, 461 U.S. at 102). Because Weizman's complaint fails to show a

18    *likelihood* that she will use Talkspace's services in the future, she has not pleaded facts

19    establishing her entitlement to injunctive relief.

20         To be certain, the fact that Weizman has knowledge of the alleged unlawful subscription

21    plan does not necessarily bar her claim for injunctive relief. *See, e.g.*, *Davidson*, 889 F.3d at 969–

22    70 (9th Cir. 2018). But Weizman's existing complaint does not plead circumstances under which

23    such relief might be available notwithstanding both her knowledge of Talkspace's automatic

24    subscription renewal and her failure to plead a likelihood of future injury.

25         The Court thus grants, with leave to amend, Talkspace's motion to dismiss Weizman's

26    request for injunctive relief.

27

28

**IV.     Weizman's Class Claims Are Sufficiently Pleaded.**

Next, Talkspace argues that Weizman's class allegations should be stricken due to the presence of a purported class waiver in Talkspace's Terms of Use.[4] Talkspace contends that Weizman consented to these terms when she first created an account on the platform. Dkt. No. 27, at 13. Weizman counters that Talkspace fails to establish that the webpage screenshot it displays in its motion to dismiss (which states: "By clicking 'Create account' you consent to telemedicine, confirm you are over 13 and accept our Terms of use and Privacy policy") was the exact webpage that Weizman saw when she first signed up on the platform. Dkt. No. 38, at 12. For example, the webpage screenshot shown by Talkspace is undated. Weizman further responds that the Terms of Use were presented to her only after she submitted her credit card information on the website and purchased therapy sessions from Talkspace. She suggests that further discovery is needed to determine the specific webflow that was used when she joined Talkspace.

The Court agrees with Weizman that there are several factual issues presented by the motion to strike class claims that cannot be resolved on this motion to dismiss. Talkspace does not demonstrate that the screenshot containing the Terms of Use was the exact webpage that Weizman saw when she signed up on the platform, meaning she may never have consented to those particular Terms. Further, Talkspace does not establish that the Terms of Use were presented to Weizman before she was charged for therapy sessions, and whether the disclosure or the purchase occurred first may be relevant in determining if there was an ARL violation or enforceable class waiver. The Court will be able to determine whether the Terms of Use apply and, if so, whether the class waiver is enforceable only after there has been an opportunity for factual development of that issue.

---

[4] The relevant text in Talkspace's Terms of Use reads: "Any arbitration under these terms and conditions will take place on an individual basis; class arbitrations and class / representative / collective actions are not permitted. The parties agree that a party may bring claims against the other only in each individual capacity, and not as a plaintiff or class member in any putative class, collective, and / or representative proceeding." Dkt. No. 27, at 13–14.

8

United States District Court
Northern District of California

United States District Court
Northern District of California

1

### V.     Weizman's Other Allegations Should Not Be Stricken.

2

Finally, Talkspace argues that certain portions of Weizman's complaint should be stricken

3

under Rule 12(f) for being immaterial to the subject matter of the litigation. In particular,

4

Talkspace contends that Weizman's allegations about the availability and adequacy of therapists

5

are highly inflammatory and irrelevant to the underlying UCL claim. Dkt. No. 27, at 24. Weizman

6

responds that the allegations are relevant as they supply "background or historical material" and

7

"contribute to a full[er] understanding of the complaint as a whole." Dkt. No. 38, at 16. Such

8

allegations should "not be stricken unless unduly prejudicial to the defendant." *LeDuc*, 814 F.

9

Supp. at 830.

10

Here, the allegations that Talkspace characterizes as "highly inflammatory" provide

11

relevant background to the complaint. Given the absence of a showing of undue prejudice by

12

Talkspace, the Court denies Talkspace's motion to strike the allegations.

### CONCLUSION

13

14

For the reasons discussed above, the Court grants, with leave to amend, Talkspace's

15

motion to dismiss Weizman's UCL claim and her request for injunctive relief. Weizman must file

16

any amended complaint within **twenty-one (21) days** of the filing of this order. The Court

17

otherwise denies Talkspace's motion to dismiss and motion to strike.

18

19

**IT IS SO ORDERED.**

20

Dated: December 6, 2023

21

22

P. Casey Pitts
United States District Judge

23

24

25

26

27

28